■ In the Matter of EARL B., a Person Alleged to be a Juvenile Delinquent, Appellant. — Appeal from order, Family Court, New York County (Leah Marks, J.), entered on September 15, 1982, unanimously dismissed as moot, without costs and without disbursements. Concur — Sullivan, J. P., Ross and Bloom, JJ.

Carro and Asch, JJ., concur in a memorandum by Asch, J., as follows: The procedural posture of this matter when the appeal was argued was that appellant's initial period of placement with the Division for Youth for a period of one year had expired. However, at that time a petition for extension of placement had been filed by the division and there was a scheduled hearing to determine whether the placement should be extended. In my view, this alone would not render the appeal moot. Subsequently, however, we learned that the petition for extension was denied in Family Court so that Earl B. would not be held for any additional period of time. This renders the matter moot and I concur with the majority in dismissing the appeal as such. However, I think we would be remiss to simply ignore what seems to be from the beginning, a lack of appropriate action on behalf of Earl B., which should not be repeated with other young people in his position. A recapitulation of the underlying facts, I believe, makes this clear. Appellant, 15 years old at the time of the dispositional hearing, had been cared for since infancy by a succession of elderly and sick relatives following the death of his father and abandonment by his

mother. While living with his grandmother, appellant had not attended school for years. He suffered from tuberculosis, for which he was receiving treatment. His delinquency record at the time of the hearing consisted of two misdemeanor findings, the last based on his entering the subway without paying the fare. Appellant was evaluated by the court psychiatrist, Dr. Cohen, who found that he was not aggressive. The doctor was of the opinion that appellant would not commit assaultive acts or violent crimes, describing him as calm, soft-spoken, and barely educated. Even though Earl B. did not present a threat to the community, Dr. Cohen's evaluation recommended placement in a group home setting where he could receive more supervision than that provided by his grandmother. She did not believe appellant required confinement in an institution. What the youth required for rehabilitation was explained by Dr. Cohen — a supervised group home, extensive educational help, and possibly therapy. Responding to this recommendation, the court ordered the Probation Department to explore appropriate placement. The probation officer assigned made limited and what appear to be self-defeating efforts to secure a supervised group home for appellant. Consequently, the investigation and report were incomplete. The assigned probation officer did not confer with Dr. Cohen with respect to a prejudicial statement in her report of appellant's intelligence level ("mild retardation"). Nor did he investigate the disputed question of appellant's drug and alcohol use. Actually, it appears that appellant's intelligence is within normal range and the I.Q. test results may be viewed as inaccurate because of his poor educational background. The probation officer included only the uncorrected report, i.e., the "raw" data in the referral material. In addition, the nature and extent of appellant's drug and alcohol use were not investigated before the probation officer sent out placement referrals. The appellant had made boastful assertions to Dr. Cohen of "drinking three quarts of beer daily" and "smoking" cocaine, etc., which she repeated in her report. The agencies receiving this report would assume these assertions to be accurate unless advised of any evidence to the contrary. Yet, appellant had denied alcohol and drug use to the probation officer. His grandmother, who sought placement, had not mentioned substance abuse as a problem, aside from one accidental incident involving "angel dust." Appellant did not exhibit any symptoms of withdrawal or dependency, despite the fact he was then in remand. As a result of the failure to investigate these important issues, the referral material forwarded to the agencies which were contacted presented Earl B. in the worst possible light, i.e., as a mentally retarded drug abuser. Appellant is *not* mentally retarded and his drug use is problematical. Yet, two of the three agencies which gave reasons for rejecting appellant did so on the grounds of low intelligence and drug use. In addition, the probation officer made only five referrals to private agencies, another to the Division for Youth, Title II program, where he was found "unacceptable" without an interview. The Family Court concluded that appellant "has need for a very very high degree of supervision if he is to be helped to develop external controls and have the ability to benefit from special education and therapy that seems needed by him." However, the court also conceded that in Title III appellant would be exposed to youths "whose behavior is much more aggressive and serious than the [appellant] has ever shown." The court must in its disposition balance the juvenile's best interests and needs with the need to protect the community. "The appropriate remedy is the least restrictive confinement consonant with both purposes." (*Matter of Andre L.*, 64 AD2d 479, 481.) Since the need for community protection against appellant is weak in this case, the placement ordered by Family Court must be justified primarily on the basis of appellant's needs. It is apparent, however, that appellant's "need" for Title III confinement evolved solely because of his rejection by the private agencies and Division for

Youth, Title II. A Title III placement is unwarranted on the ground that the Probation Department cannot readily locate a suitable residential facility. The essential characteristic of a Title III placement is confinement and restriction of liberty. Title II facilities, which include such nonsecure settings as foster and group homes, are operated as an alternative to Title III training schools and semisecure institutions. The record conclusively shows that appellant belonged not with hard core delinquents but in a supervised group home. The record also shows that the efforts to place appellant in such a less restrictive setting were inadequate and perfunctory. Appellant's Title III placement, in the absence of evidence that alternative dispositions were exhausted, constituted an abuse of discretion. It appears that the petition for an extension of placement was denied after this appeal was heard and thus renders the appeal moot. However, were it not for the subsequent denial of the extension of placement petition, I would hold that the appeal was not rendered moot simply by expiration of the initial period of placement. At the time this appeal was heard, the Division for Youth had filed a petition requesting an extension of the placement and there was a scheduled hearing in Family Court to determine whether the placement should be extended. However, while a dispositional hearing, pursuant to which appellant was placed in the Title II facility, and an extension hearing share some procedural similarities, the respective determinative issues at these hearings are dissimilar. At an extension hearing, the appropriateness of appellant's placement in a Title III facility is conclusively accepted as a result of the presumed validity of the dispositional order. Therefore, the determinative issue at the extension hearing is "the need for continuing the placement." (Family Ct Act, § 756, subd [b].) An extension hearing focuses on appellant's level of adjustment to his Title III confinement rather than the appropriateness of that confinement. Evidence of good adjustment is seen as a vindication of the original placement decision (even though appellant may have fared much better in a less restrictive environment) and evidence of bad adjustment is viewed as indicating its initial inappropriateness. If this court invalidates the Title III placement order, the Family Court will lack jurisdiction to extend it (cf. *People ex rel. Schinitsky v Cohen*, 34 AD2d 1020). Since the Division for Youth had filed a petition to extend placement at the time the appeal was argued, it was not, as noted, rendered moot by expiration of the initial period of the placement, but solely by reason of the subsequent denial of the petition to extend placement.